AO 257 (Rev. 6/78)

Print Form

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 371 – Conspiracy to Act as an Agent of a Foreign Government Without Notice to the Attorney General (Count One)
18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General (Counts Two and Three)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: Maximum penalties: Count One: 5 years of imprisonment; 3 years of supervised release; $250,000 fine; and $100 mandatory special assessment;
Counts Two/Three: 10 years of imprisonment; 3 years of supervised release; $250,000 fine; and $100 mandatory special assessment

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

**DEFENDANT - U.S**

▶ LIREN LAI a/k/a "Ryan" Lai and YUANCE CHEN

**DISTRICT COURT NUMBER**

**CR 25 0186 JST**

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.
3:25-mj-70788 AGT

Name and Office of Person Furnishing Information on this form ___ CRAIG H. MISSAKIAN

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned) ___ Helen L. Gilbert, Eric Cheng

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from show District

**FILED**

**JUL 1 2025**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**IS IN CUSTODY**
4) ☒ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

} ☐ Federal ☐ State

Has detainer been filed? ☐ Yes ☐ No
} If "Yes" give date filed ___

DATE OF ARREST ▶ Month/Day/Year  6/27/2025
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year ___

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

Bail Amount: ___

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:
___

Date/Time: ___    Before Judge: ___

Comments:

AO 257 (Rev. 6/78)                                                                    ☐ Print Form

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT    ☐ INFORMATION    ☒ INDICTMENT
                                     ☐ SUPERSEDING

| | Name of District Court, and/or Judge/Magistrate Location |
|---|---|

— OFFENSE CHARGED —

18 U.S.C. § 371 – Conspiracy to Act as an Agent of a Foreign Government Without Notice to the Attorney General (Count One)
18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General (Counts Two and Three)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: Maximum penalties: Count One: 5 years of imprisonment; 3 years of supervised release; $250,000 fine; and $100 mandatory special assessment;
Counts Two/Three: 10 years of imprisonment; 3 years of supervised release; $250,000 fine; and $100 mandatory special assessment

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

— DEFENDANT - U.S —

▶ LIREN LAI a/k/a "Ryan" Lai and YUANCE CHEN

DISTRICT COURT NUMBER

**CR 25 0186 JST**

— PROCEEDING —

Name of Complaintant Agency, or Person (& Title, if any)

**Federal Bureau of Investigation**

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY    ☐ DEFENSE

SHOW DOCKET NO. }
_____

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO. }

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
} 3:25-mj-70788 AGT

Name and Office of Person Furnishing Information on this form      CRAIG H. MISSAKIAN
                                          ☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)      Helen L. Gilbert, Eric Cheng

— DEFENDANT —

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**FILED**
**JUL  1 2025**
**CLERK, U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**IS IN CUSTODY**
4) ☒ On this charge

5) ☐ On another conviction
6) ☐ Awaiting trial on other charges
}  ☐ Federal  ☐ State

If answer to (6) is "Yes", show name of institution
_____

Has detainer been filed?  ☐ Yes
                          ☐ No
}  If "Yes" give date filed _____

DATE OF ARREST ▶   Month/Day/Year    6/27/2025

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

— ADDITIONAL INFORMATION OR COMMENTS —

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:
_____

Comments:

Bail Amount: _____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

CR 25 0186

JST

# United States District Court
## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

VENUE: OAKLAND

UNITED STATES OF AMERICA,

V.

LIREN LAI a/k/a "Ryan" LAI
and
YUANCE CHEN

**FILED**

JUL 1 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DEFENDANT(S).

# INDICTMENT

18 U.S.C. § 371 – Conspiracy to Act as an Agent of a Foreign Government Without
Notice to the Attorney General;
18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to
the Attorney General;

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this 1st day of

July 2025 .

*Julia Macias*

Clerk to MJ Peter H. Kang

Bail, $ No Process

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

FILED

JUL  1 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 25 0186 JST |
| Plaintiff, | VIOLATIONS: |
| v. | 18 U.S.C. § 371 – Conspiracy to Act as an Agent of a Foreign Government Without Notice to the Attorney General; |
| LIREN LAI<br>    a/k/a "Ryan" Lai, and<br>YUANCE CHEN, | 18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General; |
| Defendants. | OAKLAND VENUE |

## INDICTMENT

The Grand Jury charges:

### Introductory Allegations

At all times relevant to this Indictment, with all dates and times being approximate:

1.     Defendant Liren "Ryan" LAI ("LAI") was a citizen of the People's Republic of China ("PRC") who resided in the PRC.  LAI was in possession of a B1/B2 visitor visa for the United States.

2.     Defendant Yuance CHEN ("YUANCE") was a citizen of the PRC who arrived in the United States in or about September 2015 on a B1/B2 visitor visa.  In June 2019, YUANCE received conditional permanent resident status in recognition of his marriage to a U.S. citizen.  As of December 2022, YUANCE was a United States Lawful Permanent Resident ("LPR").  YUANCE resided in Happy Valley, Oregon.

INDICTMENT

### The People's Republic of China ("PRC")'s Ministry of State Security ("MSS")

3.    The Government of the PRC conducted intelligence activities using a variety of sources, including through its Ministry of State Security ("MSS"). The MSS handled civilian intelligence collection for the PRC and was responsible for counterintelligence and foreign intelligence, as well as political security. The MSS consisted of a central ministry, provincial state security departments, and municipal state security bureaus. Collectively, the MSS had broad powers in the PRC to conduct espionage both domestically and abroad.

4.    Among other things, the MSS and its regional bureaus focused on identifying and influencing the foreign policy of other countries, including the United States. The MSS and its bureaus sought to obtain information on political, economic, and security policies that might affect the PRC, along with military, scientific, and technical information of value to the PRC. The MSS and its bureaus were tasked with conducting clandestine and covert human source operations, of which the United States was a principal target.

5.    An "asset" was an individual who provided information or assistance to an intelligence agency and was not a member or employee of that agency.

6.    "COVCOM" was any impersonal communication that uses a proprietary system between an intelligence service and an asset or potential asset of that service.

7.    A "dead drop" was a method of tradecraft used to pass items or information between two individuals using a secret location, thus not requiring them to meet directly in order to maintain operational security.

8.    MSS Officer 1 was an intelligence officer of the MSS who resided in the PRC.

9.    MSS Officer 2 was an intelligence officer of the MSS who resided in the PRC.

10.    MSS Officer 3 was an intelligence officer of the MSS who resided in the PRC.

11.    Individual A was known to the MSS as a former United States government employee located in the United States. MSS intelligence officers communicated with Individual A to, among other things, coordinate dead drop cash payments for him in exchange for information provided to the MSS that related to the national security of the United States.

12.    The MSS communicated with Individual A using email and COVCOM covert

INDICTMENT                                    2

communication tools provided by the MSS that allowed for real-time two-way communication (hereinafter and collectively, the "COVCOM tools"). The MSS typically used email communications to discuss less sensitive matters, such as scheduling COVCOM transmissions and operational activity. The MSS used the COVCOM tools to engage in more sensitive communications.

COUNT ONE:        (18 U.S.C. § 371 – Conspiracy to Act as an Agent of a Foreign Government Without Notice to the Attorney General)

13.    Paragraphs 1 through 12 of this Indictment are re-alleged and incorporated as if fully set forth here.

### The Conspiracy

14.    Beginning at least as early as June 2015 and continuing through in or about June 2025, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

**LIREN LAI a/k/a "Ryan" Lai, and
YUANCE CHEN,**

and others known and unknown to the Grand Jury, did knowingly and intentionally conspire and agree to commit offenses against the United States, that is, without notifying the Attorney General as required by law, to act as agents of a foreign government, to wit, the government of the People's Republic of China, in violation of Title 18, United States Code, Section 951.

### Defendants' Co-Conspirators

15.    **Co-Conspirator 1** was a citizen of the PRC who resided in the PRC. Since at least as early as June 2015 up to and including February 2024, **Co-Conspirator 1** has carried out various clandestine operations in the United States on behalf of the MSS directly related to the MSS's communications with **Individual A.** Specifically, **Co-Conspirator 1** has traveled to the United States to deliver payments on behalf of the MSS, test and trouble-shoot MSS COVCOM tools, retrieve information on behalf of the MSS, and also, from abroad, directed other individuals in the United States to facilitate payments on behalf of the MSS.

16.    **Co-Conspirator 2** was a citizen of the PRC who resided in the PRC. **Co-Conspirator 2**

INDICTMENT                                3

traveled to the United States from the PRC at least twice, in 2015 and 2017, with **Co-Conspirator 1** to test and trouble-shoot MSS COVCOM tools at the direction of the MSS.

<u>Manner and Means</u>

17.    **LAI, YUANCE, Co-Conspirator 1,** and/or **Conspirator 2,** acting under the direction and control of MSS intelligence officers, engaged in conduct in the United States, including by:

a)    Delivering and/or facilitating COVCOM tools for one or more individuals in the United States;

b)    Facilitating communication with the MSS through the COVCOM tools;

c)    Facilitating payments from the MSS to one or more individuals in the U.S. (through direct cash payments, dead drops, and otherwise), in which these payments were in exchange for the MSS's receipt of information related to the national security of the United States;

d)    Gathering information about the U.S. military, including U.S. Navy service members, recruitment centers, and bases, and providing this information to the MSS; and

e)    Recruiting or attempting to recruit other potential MSS assets from within the U.S. military.

<u>Overt Acts</u>

18.    In furtherance of the conspiracy and to effect the objects thereof, defendants and others known and unknown to the Grand Jury, did commit and cause to be committed the following overt acts, among others, in the Northern District of California and elsewhere:

a)    On June 23, 2015, **Co-Conspirator 1** and **Co-Conspirator 2** flew from the PRC to San Francisco, California, to test and trouble-shoot the COVCOM tool at the direction of the MSS. On July 2, 2015, shortly before **Co-Conspirator 1** and **Co-Conspirator 2** returned to the PRC on July 5, 2015, the MSS indicated to Individual A that the COVCOM tool was now ready for use. While in the United States, **Co-Conspirator 1** called and received an electronic message from MSS Officer 1, who was later identified in **Co-Conspirator 1's** phone contacts as "Section Head [MSS Officer 1's surname], Ministry of State Security."

b)    In February 2017, the MSS indicated to Individual A that in March, an individual

INDICTMENT                                         4

would travel to the United States and provide a $30,000 payment. On March 8, 2017, **Co-Conspirator 1** wired $30,000 to Person 1, an individual who resided in the San Francisco Bay Area. On March 13, 2017, **Co-Conspirator 1** flew to San Francisco, California, to make a $30,000 payment on behalf of the MSS, and met with Person 1. While in the United States, **Co-Conspirator 1** exchanged text messages with MSS Officer 1.

c)      In June and October 2017, the MSS told Individual A that the COVCOM tool was not working. On October 10, 2017, **Co-Conspirator 1** and **Co-Conspirator 2** flew from the PRC to San Francisco, California, to test and trouble-shoot the COVCOM tool at the direction of the MSS. On October 14, 2017, **Co-Conspirator 1** and **Co-Conspirator 2** returned to the PRC. On October 23, 2017, the MSS told Individual A that the COVCOM tool was working.

d)      In December 2021, the MSS told Individual A that an "exchange" (following a previous acknowledgment that the MSS owed Individual A $10,000 and agreement to add "a few thousand" to the amount) would happen January 12, 2022. In January 2022, **LAI** and **YUANCE** facilitated a dead drop of cash for the MSS. **LAI** and **YUANCE** were in the PRC at the time, and **LAI** directed **YUANCE** to set up the dead drop. **YUANCE** directed his spouse, Person 2, to fly from Portland, Oregon to San Francisco, California, on January 12, 2022, and to leave a backpack containing at least $10,000 in cash in a day-use locker at a recreational facility in Livermore, California.

e)      On March 27, 2023, **LAI** traveled to the United States, and in April 2023, acting upon direction from the MSS, gave **YUANCE** a COVCOM tool that **YUANCE** had described as a "state secret." On April 17, 2023, MSS Officer 2 directed **YUANCE** to communicate with the MSS using the COVCOM tool provided by **LAI**.

f)      The MSS directed **YUANCE**, initially via **LAI**, to gather general intelligence about United States military facilities and employees.

i.      On May 12, 2022, **YUANCE** sent **LAI** photographs of Naval Base Kitsap in Bremerton, Washington.

ii.      On July 20, 2022, **YUANCE** sent **LAI** a video surreptitiously recorded by Person 2 inside of U.S. Navy Recruiting Station Alhambra, located in San Gabriel,

INDICTMENT                          5

California.

    iii. On May 4, 2023, **YUANCE** sent MSS Officer 2 photographs taken the day before by Person 2 inside of U.S. Navy Recruiting Station Alhambra. These photographs were of bulletin boards with the names and photographs of enlisted U.S. Navy recruits along with other documents. Many of the photographs included the full names, programs, hometowns, and the recruiter's name for recent U.S. Navy recruits, and a majority of the recruits depicted in the photographs listed their hometown as "China."

    iv. An MSS officer directed **YUANCE** to recruit current U.S. Navy employees or individuals attempting to enlist in the U.S. Navy to be assets for the MSS, including regarding potential bonuses available to be paid to these individuals, preferred Naval job assignments for potential recruits, and methods for minimizing **YUANCE**'s risk of exposure in September 2023.

    g) **YUANCE**, at the direction of **LAI** and MSS Officer 2, specifically gathered information about and contacted an active-duty member of the U.S. Navy, Navy Employee 1. **YUANCE** provided the MSS with information about Navy Employee 1, and the MSS directed **YUANCE** to try to recruit Navy Employee 1 as an MSS asset.

    i. On April 24, 2022, **YUANCE** sent **LAI** Navy Employee 1's name.

    ii. On October 12, 2022, **LAI** sent **YUANCE** Navy Employee 1's address in San Diego, California.

    iii. In March 2024, **YUANCE** communicated with Navy Employee 1 on a social media platform, and then sent these communications to **LAI**.

    iv. On January 3, 2025, **YUANCE** met with Navy Employee 1 in San Diego, California, surreptitiously recorded and took photographs of this meeting with Person 2's help, and then sent the recording and photographs to MSS Officer 2.

    v. On January 5, 2025, **YUANCE** and Person 2 toured the USS Abraham Lincoln, an aircraft carrier docked in San Diego Bay, with Navy Employee 1 and another Navy employee, Navy Employee 2. **YUANCE** sent photographs of himself with

INDICTMENT                               6

Navy Employee 1 and Navy Employee 2 on the USS Abraham Lincoln to MSS Officer 2.

    vi.    In February and March 2025, **YUANCE** met with MSS Officer 2 multiple times in the PRC. MSS Officer 2 directed **YUANCE** to contact Navy Employee 1 and gave **YUANCE** questions to bring back to the United States.

    h)    In January 2024, the MSS advised Individual A of the location for a payment to Individual A in San Francisco. On February 29, 2024, upon direction from **Co-Conspirator 1**, Person 3 left a $20,000 dead drop payment in Person 3's vehicle at a specific location in San Francisco. The MSS advised Individual A of the same location and provided the license plate number of Person 3's vehicle.

    i)    In April and May 2024, **YUANCE** and Person 2 traveled to the PRC, where **YUANCE** met with MSS officers, including MSS Officer 1 and MSS Officer 2. On May 9, 2024, MSS Officer 2 discussed with **YUANCE** payments to **YUANCE** from the MSS.

    j)    On May 10, 2025, at the direction of MSS Officer 2 and MSS Officer 3, **LAI** drove from Houston, Texas to Phoenix, Arizona and made a dead drop payment of approximately $20,000 in a parking garage on behalf of the MSS.

    k)    On June 27, 2025, **YUANCE** possessed two targeting packages at his residence in Happy Valley, Oregon, that is, documents containing detailed biographical and other information about two specific individuals. One of these packages described Navy Employee 1; the other described a retired member of the military who lives in Oregon.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO:**    (18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General)

    19.    Paragraphs 1 through 18 of this Indictment are re-alleged and incorporated as if fully set forth here.

//

//

INDICTMENT        7

20.     From at least as early as in or about May 2021, up to and continuing until in or about May 2025, in the Northern District of California and elsewhere, the defendant,

**LIREN LAI a/k/a "Ryan" Lai,**

did knowingly, without notifying the Attorney General as required by law, act as an agent of a foreign government, to wit, the government of the People's Republic of China.

All in violation of Title 18, United States Code, Section 951.

COUNT THREE:       (18 U.S.C. § 951 – Acting as an Agent of a Foreign Government Without Notice to the Attorney General)

21.     Paragraphs 1 through 20 of this Indictment are re-alleged and incorporated as if fully set forth here.

22.     From at least as early as in or about May 2021, up to and continuing until in or about June 2025, in the Northern District of California and elsewhere, the defendant,

**YUANCE CHEN,**

did knowingly, without notifying the Attorney General as required by law, act as an agent of a foreign government, to wit, the government of the People's Republic of China.

All in violation of Title 18, United States Code, Section 951.

DATED: July 1, 2025                                    A TRUE BILL.


                                                       _____/s/_____
                                                       FOREPERSON


CRAIG H. MISSAKIAN
United States Attorney


_____/s/_____
HELEN L. GILBERT
ERIC CHENG
Assistant United States Attorneys


INDICTMENT                              8

JENNIFER KENNEDY GELLIE
Chief
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice


_____/s/_____

DALLAS J. KAPLAN
FATEMA MERCHANT
ELI ROSS
Trial Attorneys

INDICTMENT                                 9